| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 1:09-CR-158(1) |
| | § | |
| JAMES ALVIN GODFREY | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant James Alvin Godfrey's ("Godfrey") *Pro Se* Motion for Early Termination of Supervised Release (#251), wherein Godfrey seeks early termination of his three-year term of supervised release. Godfrey's United States Probation and Pretrial Services ("Probation") Officer in the Eastern District of Texas prepared a report for the court's consideration. Godfrey's assigned Probation Officer in the Southern District of Texas is opposed to his request for early termination of his supervised release as is his supervisory Probation Officer in the Eastern District of Texas. The Government is also opposed. Having considered the motion, Probation's report, the Government's position, the record, and the applicable law, the court is of the opinion that Godfrey's motion should be denied.

I.   Background

On November 18, 2009, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a three-count Indictment against Godfrey and two co-defendants, charging him in Count One with Conspiracy to Possess 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846; in Count Two with Possession of 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1); and in Count Three with Possession of Cocaine, in violation of 21 U.S.C. § 841(a)(1). Godfrey pleaded guilty to the offense charged in Count Three of the Indictment on October 4, 2010, without a plea agreement. On March 9, 2011, the court

sentenced Godfrey to a term of 210 months' imprisonment, followed by a three-year term of supervised release. On July 23, 2015, his sentence was reduced to 175 months' imprisonment pursuant to 18 U.S.C. § 3592(c)(2). Godfrey began his term of supervised release in the Southern District of Texas on April 26, 2023, which is currently projected to expire on April 25, 2026.

In his motion, Godfrey, age 50, asks the court to terminate his supervision at this time, having served more than two years of his three-year term of supervised release. He asserts that he has diligently complied with all the requirements of supervision set by the court. He states that he has submitted monthly reports, maintained steady employment at Garda World Security and Ark of Security for two years, completed alcohol and drug education programs, attended all scheduled meetings with the probation officer, submitted to all drug tests, paid all restitution payments on time, resided at the approved residence without incident, and completed all required programs. Godfrey claims that he has made significant strides in his rehabilitation and claims that he has successfully reintegrated into the community. He elaborates that he has obtained certification to operate forklifts and is currently studying for his CDL commercial driver's license. Godfrey elaborates that he "has demonstrably changed his life by forming his own company by way of LLC and is awaiting the opportunity to contribute to the American supply chain by hauling supplies with his logistics company." He adds that he has shown a commitment to a law-abiding lifestyle by creating a family structure with his grandchildren, attending church with his family, and overcoming his re-entry challenges. Godfrey maintains that he is not a risk to re-offend.

Godfrey apparently overlooks the fact that he has already violated the conditions of his supervised release by testing positive for the use of marijuana, first on June 7, 2023, and recently on July 24, 2025. He has now been re-enrolled in drug treatment services in the Southern District

of Texas. As a result, Melanie Stephens, his Probation Office in Houston, is opposed to early termination due to the violations and believes that continued supervision and treatment is warranted in this case. The Probation Office in the Eastern District of Texas "concurs with USPO Stephens and respectfully recommends the Court deny Mr. Godfrey's motion for early termination."

II. Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering certain of the factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir. 2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018). "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1

---

[1] These factors include: the nature and circumstances of the offense and the defendant's history and characteristics; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

(E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018).  Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022).  "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).  In fact, in *United States v. Bowe*, the United States Court of Appeals for the Fourth Circuit stated that "Congress has manifested an intent to require full service of supervised release for rehabilitative purposes."  309 F.3d 234, 240 (4th Cir. 2002) (citing *Johnson*, 529 U.S. at 53).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination.  *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022); *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior

4

when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient,

5

but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision). Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *United States v. Baptiste*, No. 98-207, 2025 WL 871520, at *1 (E.D. La. Mar. 20, 2025) (noting that early termination is generally warranted "only in cases where the defendant shows changed circumstances, such as exceptionally good behavior" (quoting *United States v. Jones*, No. V-11-21, 2013 WL 2417927, at *1 (S.D. Tex. June 4, 2013)); *Smith*, 2014 WL 68796, at *1.

According to Godfrey's Presentence Report ("PSR"), prepared on December 2, 2010, his offense of conviction entails his possession with the intent to distribute cocaine. On October 27, 2009, officers with the Beaumont Police Department received information from a confidential source regarding a residence where crack cocaine and powder cocaine were being sold. When surveillance was established on the residence, officers observed activity consistent with drug

trafficking. A search warrant was prepared as a result. Officers observed a female arrive in a small car, but she did not exit the vehicle. A short time later, Codefendant Jamar Dantrelle Ross ("Ross") left the residence with a package in his hand and proceeded to sit in the front passenger seat of the car. The pair left the residence, and a marked police car subsequently stopped the vehicle for a traffic violation. While speaking with the occupants, an officer observed a donut bag with a clear plastic window located on the front passenger side floor board between Ross's feet. Numerous cookies of crack cocaine could be seen through the window of the donut bag. Ross was arrested, the bag was retrieved, and 38 cookies of crack cocaine were counted.

Following the arrest of Ross, a search warrant was obtained and executed at the residence under surveillance. Godfrey was observed on the porch. As the police approached, he ran inside the house and then exited the rear of the residence with a plastic bag in his hand. Godfrey threw the bag into a trash can, and after running a short distance, he surrendered. The bag was retrieved, and officers found a large quantity of powder cocaine in 12 individually wrapped packages inside the bag. During a search of the residence, officers located a bowl and plate in a microwave that contained cocaine residue, a box of Arm & Hammer baking soda that contained several small plastic bags with cocaine residue, and mail addressed to Godfrey. Currency in the sum of $1,150 was found on his person, and there was a federal leg monitor on his leg because he was on federal supervised release at the time. Godfrey was arrested.

Subsequent investigation revealed that, at the time of his arrest, Ross was en route to Newton, Texas, to deliver several cookies of crack cocaine to a third person. Ross revealed during questioning that he had delivered narcotics to Newton County on two or three prior occasions. He stated that the powder cocaine had been sent from Houston, Texas, by three

individuals affiliated with a music group. The powder cocaine was later cooked at Godfrey's residence for distribution. The powder cocaine that was seized from Godfrey was left over from the cooking process. Ross stated that he anticipated being paid appoximately $500 to $600 for transporting the crack cocaine to Newton. He also stated that he knew Godfrey as J-Mac, a known nickname for Godfrey. The crack cocaine and powder cocaine seized was forwarded to the Jefferson County Regional Crime Laboratory for analysis. The laboratory report reflects that the crack cocaine (cocaine base) weighed a total of 383.80 grams and the powder cocaine (cocaine HCl) weighed a total of 332.17 grams.

Godfrey's Presentence Investigation Report reveals that he has an extensive criminal history beginning at age 14 which includes prior convictions for unauthorized use of a motor vehicle (4x), burglary of a habitation, felony theft (3x), assault with bodily injury, aggravated robbery, burglary of a habitation (4x), attempted burglary of a habitation, possession with intent to deliver barbiturates, failure to identify, evading detention, attempted murder (3x), assault, and possession with intent to distribute cocaine base. Godfrey was on supervised release for the latter offense at the time he committed his offense of conviction, which occurred only six days after he was released from federal prison. He also had previous terms of probation and parole revoked. Godfrey has a long history of substance abuse starting at age 9, which includes the use of alcohol, marijuana, liquid codeine, and cocaine.

In this situation, the court finds that Godfrey's post-release conduct does not warrant early termination of his supervised release. Although Godfrey appears to have complied with most of his conditions of release to date, he identifies no new or exceptional circumstances or needs. Notably, he has failed to comply with the condition of his supervised release which prohibits him

8

from possessing and using illicit substances, the last instance occurring just over a month ago. Godfrey presents no new or exceptional circumstances or needs that would merit early release from supervision. He fails to explain how the conditions of his supervised release limit his employment opportunities, interfere with his family responsibilities, or otherwise impact his daily life in a significant manner. Godfrey also does not clarify how being on supervised release keeps him from furthering his career, achieving additional goals, assisting his family, or engaging in sports, religious, or volunteer activities. Under the circumstances, the court finds the current conditions of Godfrey's supervised release are not onerous and remain appropriate in view of his offense of conviction involving his possession with intent to distribute a substantial quantity of cocaine, his prior federal drug offense, his failure to comply with previous terms of parole, probation, and supervised release, and his long history of poly-substance abuse.

At this time, Godfrey has served more than two-thirds of his three-year term of supervised release. While Godfrey's achievements to date should be commended, continuing him on supervision will provide him the best opportunity for success in reentry in view of his prior commission of crimes of violence and crimes involving the possession and distribution of drugs. Requiring Godfrey to complete his entire, three-year term of supervised release safeguards against the reoccurrence of criminal activity and drug use, while imposing only a minimal burden on Godfrey. Generally, early termination of supervised release is not granted unless there are significant medical concerns, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release. Godfrey does not identify any such circumstances in his motion and is instead seeking early termination of his supervision simply for complying with most of the conditions of release imposed by the court. Thus, although Godfrey

appears to be on the right path, the court believes that completion of his full term of supervised release appropriately reflects the seriousness of his offense of conviction, deters future criminal conduct, and provides needed structure for his continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4.  The court, likewise, is of the opinion that his current sentence, including the three-year term of supervised release, was appropriate at the time of sentencing and remains so. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021).  Godfrey's remaining on supervision is necessary to allow him to continue receiving drug testing and treatment under the auspices of the Probation Office, as he appears to continue to struggle with substance abuse.

The court therefore concurs with the positions and recommendations of the Probation Officers and finds that the early termination of Godfrey's three-year term of supervised release would not be in the interest of justice.

III.   Conclusion

In accordance with the foregoing, Godfrey's *Pro Se* Motion for Early Termination of Supervised Release (#251) is DENIED.

SIGNED at Beaumont, Texas, this 27th day of August, 2025.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE